UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SOON PARK**, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-cv-761 (TSC) |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Soon Park, who is of Korean descent, brings this employment discrimination action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), *et seq.* against Defendant Washington Metropolitan Area Transit Authority (WMATA), alleging discrimination based on national origin.[1] WMATA has moved for Summary Judgment, ECF No. 17. For the reasons stated below, the court will GRANT the motion.

I.   BACKGROUND

Park worked as a mechanic for WMATA from 1975 until his retirement in 2002. ECF No. 17-2, Defs. SOF ¶¶ 2–3. WMATA later rehired Park in 2008 as a part-time mechanic in its Department of Traction Power Maintenance (DTPM), at its West Falls Church location, where he was the only part-time re-employed retiree. *Id.* ¶ 3; ECF No. 21-1, Pls. SOF ¶ 6. Sometime later, Theodore Bailey became Park's area manager and eventually changed Park's duties from

---

[1] The court previously granted WMATA's Motion to Dismiss Plaintiff's Age Discrimination in Employment Act claim. ECF No. 12.

1

handling electrical repairs—which he had primarily done throughout his WMATA career—to carrying and supervising heavy equipment, such as trailers and generators. Pls. SOF ¶¶ 7, 15–17. Park subsequently requested what he describes as "safety equipment," such as a block "that goes behind wheels to prevent slippage and strips to prevent luggage to move back and forth." Pls. SOF ¶¶ 17, 19; ECF No. 21-2, Park. Dep. at 53–55. Park alleges that Bailey denied the request because Park did not need these items and instead told Park he "should make them" because Bailey did not have a credit card and therefore could not "make a request." Park Dep. at 53–54. Park claims he then asked his first and second-line superiors to provide the safety tools, but they told him to talk to Bailey, as he was their upper-level supervisor, and had a credit card for this purpose. *See id*. at 54–56.

Park claims he sought to make the tools he needed himself and tried to obtain cables from a WMATA scrap metal dumpster on October 24, 2016. *Id*. at 55–58. But the Metro Transit Police Department, having received a tip that someone was taking cables from a recycling dumpster, discovered Park, who claims he explained to the officers that he wanted to "reuse" the materials. Park Dep. at 58; Pls. SOF ¶ 22; ECF No. 17-6, Dorrity Decl. at ECF p. 8. According to the police report, when the officers contacted several of Park's supervisors, the supervisors told them that cables should not be reused because only new cables should be installed on projects. Dorrity Decl. at ECF p. 8. The supervisors also said the that the scrap materials had value because WMATA recycled them. *Id.*

Two weeks before the incident, Bailey was notified that someone had been observed taking items from the dumpster and claims he informed his "direct reports," and "personally visited each shift" explaining that taking materials from the dumpster was considered theft of WMATA property. ECF No. 17-5, Bailey Dep. at 36, 38–40. Bailey told the officers that he had

2

not given Park permission to reuse the cables and that any employee removing cables from the dumpster should be criminally prosecuted. Pls. SOF ¶¶ 24–25.

The officers arrested Park and purportedly told him he could not return to WMATA property until the criminal charges were resolved or he would be considered a trespasser. Park Dep. at 16, 34–36, 46–47. But nobody from WMATA told Park to return his employee ID badge or his work keys, and Park claims he still had them when he brought this case. ECF No. 10-2, Park Decl. ¶ 3; ECF No. 19-1, Pls. Resp. to Defs. SOF ¶ 13.

On December 15, 2016, Doojin Han, Acting Assistant Superintendent for the DTPM, sent a letter to Park at the address listed in his employment records informing him that his employment was being terminated effective December 19, 2016. ECF No. 11-1, Han Decl. at Ex. A. The letter did not give a reason for the termination. *Id*. Park claims he never received the letter. Park Dep. at 18–19.

By December 28, Park received a pay stub reflecting a payment of zero dollars, and he subsequently received four additional pay stubs in the same amount through February 1, 2017. Defs. SOF ¶¶ 17–18. No additional pay stubs followed. *Id*. ¶ 18

In mid-June, after learning that the criminal charges against Park had been dropped, Park's son contacted the union to arrange for Park's return to work. ECF No. 10-1, Kyong Park Decl. ¶ 2. Apparently, the union did not have any information that Park's employment status had changed, so a union representative contacted WMATA, who responded that Park had been terminated. ECF No. 10-3, Kyong Park Decl. at Ex. A. On July 5, 2017, a union representative forwarded a message from WMATA to Park's son indicating that Park had been sent a termination letter in mid-December of 2016. *Id.* at ECF p. 5. Park's son claims that when he called WMATA's Human Resources Department to ask why it had sent no termination notice,

WMATA responded that the "position had been removed and no letter was required." ECF No. 10-1, Kyong Park Decl. ¶ 5. Park's son subsequently requested a copy of his father's personnel file, which did not contain a copy of the letter, *id*. ¶ 6, although WMATA produced a copy of the letter during discovery. ECF No. 11-1, Han Decl. ¶ 5; ECF No. 11-3, Ex. A. Park contends WMATA discriminated against him based on national origin when it terminated him.

## II.     LEGAL STANDARD

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

### III. DISCUSSION

WMATA contends that summary judgment is warranted because Park did not file his discrimination charge with the EEOC within 180 days of the alleged discrimination and, even if he did timely file the charge, he has not presented sufficient evidence for a reasonable jury to find his termination was motivated by discriminatory animus based on his national origin.

#### A. Exhaustion of Administrative Remedies

In Title VII cases, "an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident." *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) (citations omitted). But "the limits are not jurisdictional and 'are subject to equitable tolling, estoppel, and waiver.'" *Vick v. Brennan*, 172 F. Supp. 3d 285, 297 (D.D.C. 2016) (cleaned up) (quoting *Bowden v. U.S.*, 106 F.3d 433, 437 (D.C. Cir. 1997)). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bowden*, 106 F.3d at 437 (citations omitted). "An employee is entitled to equitable tolling if he demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (some citations omitted). "Equitable tolling is meant to ensure that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." *Dyson v. D.C.*, 710 F.3d 415, 422 (D.C. Cir. 2013) (cleaned up and citation omitted). "To avoid summary judgment, [the plaintiff] must show the existence of evidence sufficient to permit a reasonable conclusion that the statute of limitations should have been

5

equitably tolled." *Smith-Haynie v. D.C.*, 155 F.3d 575, 579 (D.C. Cir. 1998) (cleaned up and citation omitted). "[T]he statutory clock in a discrimination case begins to run when a plaintiff knows or should have known of the defendant's discriminatory action." *Faison v. D.C.*, 664 F. Supp. 2d 59, 66 (D.D.C. 2009) (citation omitted); *Rendon v. D.C.*, No. 85–3899, 1986 WL 15446, at *5 (D.D.C. Nov. 19, 1986) (granting summary judgment to defendant with respect to claims plaintiff "knew or should have known arose" more than 180 days before the filing an EEOC charge).

WMATA argues that because Park filed his EEOC charge on January 2, 2018, 379 days after his December 15, 2016 termination letter, he did not timely exhaust his administrative remedies, and an employee exercising due diligence would have discovered much sooner that he had been terminated.

Park counters that he only learned of his termination on July 5, 2017, after his son received the email the union forwarded from WMATA. *See* ECF No. 10-1, Kyong Park Decl. ¶¶ 4–5. Consequently, his January 2, 2018 EEOC charge, filed 180 days later, was timely.[2]

Viewing the facts in the light most favorable to Park, the court finds he has proffered evidence that a reasonable person would not have known that the statutory clock began to run until the union informed him that he had been terminated. Park was facing criminal charges and was told by a person in authority not to return to work until the matter was resolved. Moreover, it appears that he retained possession of his ID badge and WMATA keys upon release from

---

[2] 180 days from July 5, 2017 was January 1, 2018, a federal holiday, and therefore Plaintiff had until January 2, 2018 to file his charge. U.S. Equal Emp't Opportunity Comm'n, *Time Limits for Filing a Charge*, https://www.eeoc.gov/time-limits-filing-charge (last visited September 30, 2022).

custody.³  Under these circumstances, a reasonable person might believe he was suspended pending resolution of the criminal charges.  As such, Park has evidence of "extraordinary circumstances" standing in his way of timely pursuing his administrative remedies.  *See Niskey,* 859 F.3d at 7; *Long v. Howard Univ.*, 550 F.3d 21, 26–27 (D.C. Cir. 2008) ("jury instruction concerning the University's statute-of-limitations defense was well within the acceptable bounds of its discretion" where instruction inquired when plaintiff "knew, or by the exercise of reasonable care should have known" about alleged adverse employment action).  And, importantly, as soon as the charges were dropped, he immediately inquired (via his son) about returning to work and learned he had been terminated.  Thus, Park also has evidence that he pursued "his rights diligently."  *Niskey,* 859 F.3d at 7.  Accordingly, the court will deny summary judgment for WMATA on its timeliness defense.

## B. <u>Merits of the Title VII Claim</u>

Title VII discrimination claims are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Young v. UPS*, 575 U.S. 206 (2015) (applying the *McDonnell Douglas* framework in a Title VII case).  Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id*. at 213.  If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Id*.  If the employer proffers such a reason, the burden reverts to the plaintiff to establish that the employer's reason was actually a pretext for discrimination.  *Id*.

---

³ Park's own evidence about whether he kept his badge and keys upon release from custody is conflicting.  *Compare* ECF No. 10-3, Kyong Park Decl. at Ex. A; Park Dep. at 34–39, 41 *with* ECF No. 10-2, Park Decl. ¶ 3; ECF No. 19-1, Pls. Resp. to Defs. SOF ¶ 13.  But both parties base their legal arguments on Park's sworn declaration stating that he retained the items after his arrest.  *See* Defs. SOF ¶ 13; ECF No. 19-1, Pls. Resp. to Defs. SOF ¶ 13.

7

At the summary judgment stage however, once the defendant provides a legitimate, nondiscriminatory explanation for its actions, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, at that point the court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*

WMATA contends that it terminated Park for two reasons. First, it decided to terminate all part-time mechanics in the DTPM because the "department's needs were better served by full time mechanics." Def. SOF ¶ 21; ECF No. 17-4, Defs. Ans. to Interrogatories ¶ 6. Second, Park abandoned his position when he failed to request a leave of absence or contact his supervisors regarding the state of his employment after his arrest. Defs. Ans. to Interrogatories ¶ 6.

Because WMATA asserted legitimate, nondiscriminatory reasons for Park's termination, the burden shifts to Park to produce sufficient evidence for a jury to reasonably conclude that the reasons for his termination are a pretext for discrimination. Park contends that he has established a history of discriminatory treatment that supports a finding of pretext.

Park first points to Bailey's handling of the dumpster incident. ECF No. 19, Pls. Opposition at ECF pp. 9–10. Park notes that he is not fluent in English, that his supervisors spoke to him in "easy" English, and that Bailey testified that Park spoke "broken English at times." Pls. SOF ¶¶ 12–13; Park Dep. at 71–72, 17–19. Accordingly, Park hypothesizes that Bailey told employees not to obtain materials from the dumpster in a group setting where Park

either was not present or did not understand the instruction because Bailey failed to use "easy English." Pls. Opposition at ECF p. 9.[4]

Park contends that Bailey should have known that Park's language barrier was the "likely cause of confusion over the [dumpster] situation." Pls. Br. at 9. Consequently, Bailey should not have recommended that the officers arrest Park without determining whether Park was attempting to steal the equipment or merely taking it to use at work. Pls. Br. at 9–10. Park further faults Bailey for not getting Park's version of the incident, failing to maintain notes from his "investigation" of the incident and calling, rather than following up in writing, with his supervisors. Pls. Br. at 9–10.

Park's attempts to establish pretext are unavailing. He disagrees with the way Bailey handled the dumpster incident but has proffered no evidence that Bailey acted with discriminatory intent. There is no evidence that Bailey selectively enforced the dumpster policy, and Park does not provide a reason why Bailey should have questioned the police officer's account of Park's role in the incident or should have assumed the incident stemmed from a misunderstanding or miscommunication. The fact that Bailey did not speak to Park after the arrest is also not unusual, as Park did not return to work and there is no evidence that Bailey knew why Park had not returned. Bailey did, however, speak with several supervisors in an attempt to find out what they knew about the incident, but did not uncover any additional information. Bailey Dep. at 43–50. While Bailey could not locate his notes, he indicated that he spoke with his supervisors about his investigation. *Id*. at 46–48. Nothing about these circumstances suggest impropriety or discriminatory intent.

---

[4] In his response to WMATA's SOF, Park does not dispute that Bailey gave this instruction but claims it is "possible" Bailey gave the directive to others but not to him, due to his work hours. ECF No. 19-1, Pls. Resp. to Defs. SOF ¶ 31.

Park also claims that WMATA's proffered reliance on his "inability to return to work" as a basis for his termination due to abandonment is also evidence of pretext. Pls. Opposition. at ECF pp. 11–12. This argument likewise fails, as there is no evidence that anyone in Park's chain of command knew that one of the police officers allegedly told Park he could not return to work. Thus, it was not unreasonable for WMATA to have believed that Park—who was semi-retired—had abandoned his job. *See George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("[P]roving that an employer's reason is false will not always be sufficient to demonstrate pretext. This is so because an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false.") (citation omitted)

Park contends that Bailey's decision to move him to non-electrical work managing equipment establishes pretext, Pls. Opposition. at ECF p. 10, but he has offered no evidence to support this assertion. He presents no comparator evidence, nor any other evidence that would suggest Bailey's reasons for the reassignment were discriminatory.[5]

Park also appears to contend that the manner in which WMATA handled his termination, in contrast to the other part-time retirees, establishes pretext. He notes that the deciding official notified Park about his termination in December 2016, while the other three part-time retirees were not terminated until February 2, 2017, June 20, and June 30, 2017. Pls. Opposition at ECF p. 11. Park also points out that the deciding official spoke with the other employees directly about their termination, but did not speak to Park, nor was Park's termination letter signed. *Id*.

---

[5] To the extent Park claims the reassignment supports an independent and actionable discrimination claim, there is no evidence that such a claim would be timely, as it occurred before the December termination letter. Thus, WMATA's same timeliness arguments apply, and Plaintiff does not point to anything in the record suggesting that he was unaware that the reassignment was allegedly discriminatory.

10

Park's comparator argument also fails. A plaintiff can demonstrate pretext in several ways, including by showing "that the employer has treated similarly situated employees outside of her protected class more favorably in the same circumstances." *Parker-Darby v. Dep't of Homeland Sec.*, 869 F. Supp. 2d 17, 23 (D.D.C. 2012) (citing *Brady*, 520 F.3d at 495)) (cleaned up). The plaintiff and the purported comparator must be "similarly situated," however. *Mason v. Geithner*, 811 F. Supp. 2d 128, 188 (D.D.C. 2011), *aff'd,* 492 F. App'x 122 (D.C. Cir. 2012). Indeed, comparator evidence "will only give rise to an inference of discrimination if all of the relevant aspects" of the plaintiff's employment situation are "nearly identical" to those of the comparator. *Robertson v. Dodaro*, 767 F. Supp. 2d 185, 195 (D.D.C. 2011) (cleaned up) (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)).

Park has proffered no such comparator evidence. It is undisputed that he was the only part-time re-employed retiree at the West Falls Church station, so it was not unusual that he was terminated on a different date than his co-workers. Indeed, all the other former retirees were terminated on different dates. Moreover, Park's situation was unique; he had failed to return to work after being arrested for allegedly stealing company property and had not contacted his employer about his absence, and therefore it was not unusual that his supervisor did not to speak with him directly about the termination. Thus, he has failed to produce evidence that his situation was "nearly identical" in "all relevant aspects" to those of his cohorts.

Finally, Park has not proffered evidence that WMATA's decision to shift work away from part-time re-employed retirees to full-time employees was not the real reason for Park's termination. Nor is the absence of the termination letter in Park's employment file or the deciding official's failure to sign Park's termination letter evidence of pretext. These

discrepancies, in a company as large as WMATA, and without some evidence of discriminatory intent, are insufficient to show pretext.

## IV. CONCLUSION

For the reasons set forth above, the court will GRANT WMATA's motion for summary judgment.

Date:  September 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge